UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT BRINKMAN<br>115 Oak Drive<br>Elizabethtown, PA 17022<br><br>        Plaintiff,<br><br>v.<br><br>LANCASTER COUNTY SOLID WASTE<br>MANAGEMENT AUTHORITY<br>1299 Harrisburg Pike<br>Lancaster, PA 17603<br><br>        Defendant | JURY DEMANDED<br><br>No. |

## CIVIL ACTION COMPLAINT

**I. Parties and Reasons for Jurisdiction.**

1. Plaintiff, Scott Brinkman, is an adult individual residing at the above address.

2. Defendant, Lancaster County Solid Waste Management Authority, ("Defendant") is a corporation organized and registered to do business in Pennsylvania, with a principle place of business at the above address.

3. At all times material hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

4. Mr. Brinkman exhausted his administrative remedies pursuant to the Equal Employment Opportunity. (See Exhibit "A," a true and correct copy of a dismissal and notice of rights issued by the Equal Employment Opportunity Commission.)

5. This action is instituted pursuant to Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and applicable state and federal law.

6. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

7.  Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Mr. Brinkman was working for Defendant in the Eastern District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

**II. Operative Facts.**

8.  On or about December 29, 2021, Lancaster County Solid Waste Management Authority ("Defendant") hired Mr. Scott Brinkman ("Plaintiff") full the full-time position of General Laborer I. Mr. Brinkman performed all duties asked of him without any complaints or issues.

9.  Mr. Brinkman's supervisor, Michael Carroll, and Zack Spiegelmayer were harassing him during his employment and someone even went through his locker and stole some money and other things.

10. For months, Mr. Carroll made comments about Mr. Brinkman and a coworker, Bruce being homosexual due to their positive work ethic together. Mr. Brinkman never had a romantic relationship with Bruce.

11. Mr. Carroll would ask Mr. Brinkman why he was divorced and if it was because he was a homo.

12. While in the lunchroom in front of other co-workers, Mr. Carroll told Mr. Brinkman that he should have, "eaten more ass," that if he did, he would probably still be married and that his wife might take him back if he did this for her.

13. Mr. Carroll then went into physically describing how he does that for his wife.

14. One evening, Mr. Carroll told Mr. Brinkman that he should take Bruce out to dinner then he needed to bring his strap-on because Bruce, "is into that queer stuff and loves it in his ass."

15. Mr. Carroll would consistently make comments about Bruce doing Mr. Brinkman with a strap-on sex toy and me doing the same to Bruce.

16. Mike has made comments also that, "Bruce probably only f*cks his wife missionary" and that maybe Mr. Brinkman should call Bruce's wife and take care of her.

17. These comments were also made by my co-worker Zach Spiegelmayer on a regular basis.

18. Mr. Spiegelmayer and Mr. Carroll were very close and often got their chuckles in at Mr. Brinkman's expense because they knew Mr. Brinkman could not stand up for himself and risk his job because he had an important custody hearing coming up.

19. When a co-worker of Mr. Brinkman's Dakota Johnson-Ortiz ("J.O.") started work, Mr. Spiegelmayer told Mr. Brinkman that J.O. was a "fag, stay away from him. " Mr. Brinkman told him, "whatever, that doesn't bother me."

20. Later Mr. Brinkman ran into J.O and he told Mr. Brinkman, "hey Scott, I'm not gay I like women." Mr. Spiegelmayer was standing there laughing. This made for an uncomfortable working environment for Mr. Brinkman around J.O.

21. Mr. Spiegelmayer has continually caused problems for Mr. Brinkman since they had a meeting months before about Mr. Spiegelmayer sleeping in the bathroom for at least two hours on and off throughout the day. Since then, Mr. Spiegelmayer continued to retaliate and personally attack Mr. Brinkman, by making comments such as, "how Mr. Brinkman should go f--- his ex-wife".... or just give it to Bruce in the a---."

22.     Mr. Spiegelmayer and Kevin Drescher then decided to play games with Mr. Brinkman at work, like not responding to him on the radio, not setting up the skids properly at the door, or generally, just being difficult, retaliating and trying to make the workday and workplace harder on Mr. Brinkman.

23.     On or around July 7, 2022, Mr. Brinkman brought it to Mr. Carroll's attention that someone had been going through his locker.

24.     The next morning, Mr. Brinkman strategically placed items before closing his locker. When he later returned, everything was out of place from where he had left them.

25.     Unfortunately, Mr. Brinkman's locker did not lock. Mr. Brinkman had $180.00 stolen from his locker.

26.     Mr. Carroll did talk to everyone about the locker issue, but nobody admitted to it.

27.     On or around July 8, 2022, a new hire, Kevin Drescher was coming out of the bathroom while Mr. Brinkman was entering, right after the door shut, Mr. Drescher started hitting or punching something, before screaming obscenities and threats.

28.     For Mr. Brinkman's next work assignment, he was assigned to cut rolls with Mr. Drescher. After Mr. Drescher's display of aggressive behavior, Mr. Brinkman was very uncomfortable being around Mr. Drescher.

29.     Mr. Brinkman informed Mr. Carroll and he told Mr. Brinkman to go do trash and mow the cemetery, so that he and Mr. Drescher were not near each other until the waters calmed down a bit.

30.     Mike could see that Mr. Brinkman was pretty upset at the fact someone stole money from his locker and the bullying incident with Mr. Drescher, so he offered Mr. Brinkman to go home for the day.

31.     On or around July 8, 2022, Mr. Brinkman sent an email to Staci Troebliger in Human Resources complaining about Mr. Spiegelmayer and Mr Carroll making sexual comments to him and about Mr. Drescher bullying him.

32.     Amanda Manning, the HR manager was on vacation at this time and emailed Mr. Brinkman to let him know that she would meet with him on July 16, 2022.

33.     On or around July 16, 2022, Mr. Brinkman was called into the office to meet with Ms. Manning and her boss. He was terminated and not allowed to speak. According to Ms. Manning, poor attendance was the reason for the termination decision. Mr. Brinkman's complaints to Ms. Troebliger were never addressed.

34.     As a direct and proximate result of Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

**III. Causes of Action.**

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**HARASSMENT AND DISCRIMINATION**

35.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

36.     Plaintiff had to endure pervasive and regular harassment, antagonism and sexual harassment and sex-based discrimination from co-workers Mr. Carroll and Zack Spiegelmayer.

37.     The sex-based harassment that Plaintiff suffered was unwelcomed and unreciprocated by Plaintiff.

38. An employer is vicariously liable for a hostile work environment created by a supervisor.

39. This harassment detrimentally affected Plaintiff in that, among other things he suffered physical pain, embarrassment, humiliation, emotional distress, and disruption to his life because of Defendant's actions.

40. The harassment by Mr. Carroll and Zack Spiegelmayer would detrimentally affect a reasonable person for all of the reasons stated herein, as the harassment and its results would cause decreased wages, pain, drying up, lost wages, and embarrassment and humiliation to a reasonable person.

41. The harassment of Plaintiff by Defendant's employees was willful and intentional.

42. Plaintiff endured the offensive conduct because it was a condition of his continued employment.

43. Defendant's conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

44. Despite Plaintiff complaining about these issues he was having with Mr. Carroll and Zack Spiegelmayer, no meaningful remedial action was taken with respect to the harassment.

45. This willful, intentional, and unlawful sex-based harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C § 2000e, *et seq*. and requires the imposition of punitive damages.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## HOSTILE WORK ENVIRONMENT

46.     Plaintiff incorporate the preceding paragraphs as if fully set forth at length herein.

47.     At all times material hereto, and pursuant to 42. U.S.C. § 2000e-2(a), et. seq., an employer may not discriminate against an employee based on his religion, ethnicity, race, sex, or sexual orientation.

48.     Plaintiff is a qualified employee and person within the definition of 42. U.S.C. § 2000e-2(a)., et seq.

49.     Defendants are "employers" and thereby subject to the strictures of the 42. U.S.C. § 2000e-2(a)., et seq.

50.     As described above, Plaintiff, in the course and scope of his employment, was subjected to a harassing and hostile work environment.

51.     Defendants failed to remedy the harassment despite actual or constructive knowledge.

52.     Defendants' conduct constitutes a violation of the 42. U.S.C. § 2000e-2(a)., et seq.

53.     Defendant is the owner of Defendant's establishment and Plaintiff's place of employment and is therefore liable in damages to Plaintiff for hostile work environment.

54.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and

Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

55. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

56. Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Plaintiff demands attorneys' fees and court costs.

**COUNT III**
**(42 U.S.C.A. § 2000e-3(a))**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**RETALIATION**

57. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

58. At set forth above, Plaintiff made complaints about Mr. Carroll and Zack Spiegelmayer concerning the sexual discrimination and harassing conduct in the workplace and as such, Plaintiff was engaged in protected activity under Title VII of the Civil Rights Act.

59. Defendant took adverse action against Plaintiff by terminating his employment.

60. As set forth above, Plaintiff' participation in protected activity was a motivating factor in Defendant's decision to terminate his employment.

61. As such, Defendant's decision to terminate Plaintiff's employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

62. As a proximate result of Defendant conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages

8

and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

63. As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

64. Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq.*, Plaintiff demands attorneys' fees and court costs.

**COUNT IV**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

65. Plaintiff incorporates all the preceding paragraphs as if they were set forth at length herein.

66. Based on the foregoing, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting him to discrimination on the basis of his sex.

67. Plaintiff further alleges that Defendant violated the PHRA by retaliating against Plaintiff for him making complaints of sexual harassment and discrimination.

68. Defendant's conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

69. As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

70.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. Plaintiff demands attorneys' fees and court costs.

**WHEREFORE,** Plaintiff, Scott Brinkman, demands judgment in his favor and against Defendant, Lancaster County Solid Waste Management Authority, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:     /s/Mary LeMieux-Fillery, Esq.
**MARY LEMIEUX-FILLERY, ESQUIRE**
(P.A. ID 312785)
Two Penn Center, Suite 1240
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Telephone: (267) 546-0132
Telefax: (215) 944-6124
Email: Maryf@EricShore.com
*Attorney for Plaintiff, Scott Brinkman*

Date: 5/18/2023

10

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S. § 4904, relating to unsworn falsification to authorities.

5/18/2023

(Date Signed)

Scott Brinkman

11